Matthias, J.
 

 The principal question in this case involves the interpretation of Section 11663-1, General Code, effective August 15, 1939, which provides as follows :
 

 “Any judgment for money rendered in a court of record in this state upon any indebtedness, which is secured or evidenced by a mortgage, or other instrument in the nature of a mortgage, on real property or any interest therein, upon which real property there has been located a dwelling or dwellings for not more than two families which has been used in whole or in part as a home or farm dwelling or which at any time was or is now held as a homestead by the person who executed or assumed such mortgage or other instrument, or which has been held by such person as a home-site, shall be unenforceable as to any deficiency remaining due thereon, after the expiration of two years from the date of the confirmation of any judicial sale of such property completed subsequent to the rendition of such judgment, or after August 19, 1939, whichever shall be later. Provided, however, that any execution issued upon such judgment, or any action or proceeding in aid of execution, or in the nature thereof, or to marshal liens, commenced prior to the expiration of such two-year period or prior to August 19, 1939, whichever shall be later, shall not be affected by this section; and provided, further, that this section shall not affect any action or proceeding in the nature of a creditor’s bill, commenced within such two-year period or prior to August 19, 1939, whichever shall be the
 
 *318
 
 later, to subject the interest of the judgment debtor in any property owned at the date of such judgment and concealed with intent to hinder, delay or defraud creditors.
 

 “Provided, however, that the provisions of this- act may be waived by an instrument in -writing, executed by the judgment debtor within such two-year period or prior to August 19, 1939, whichever shall be the later, but such waiver shall not be effective unless within such two-year period or prior to August 19, 1939, whichever shall be the later, such waiver shall have been filed in the office of the clerk of the court in which the judgment was rendered. Upon the filing of said waiver the clerk of the court in which such judgment was rendered shall enter a memorial thereof on the docket in which the judgment was rendered.
 

 ‘ ‘ The provisions of this act shall apply to all actions and proceedings pending and all judgments existing at the effective date thereof.”
 

 As stated by appellants, the questions involved in this case are the following:
 

 1. Does Section 11663-1, General Code, as effective August 15, 1939, operate to preclude the enforcement of a deficiency judgment rendered upon premises which were never occupied or held as a homestead, by the mortgagor and which premises are primarily a business block consisting of a storeroom on the first floor and living quarters for not more than two families on the second and third floors ?
 

 2. Is Section 11663-1, General Code, constitutional?
 

 3. Did the court err in overruling the motion of appellants for an order requiring appellee, Employees ’ Transit Lines, Inc. (which was accused of colluding with the appellee, Edgar G. Yeckley, to defraud the appellants) to permit appellants to inspect and make copies of books and records of that company and to produce such books and records at the trial?
 

 The first and second questions will be treated to
 
 *319
 
 gether. In the case of
 
 Smith
 
 v.
 
 New York Central Rd. Co.,
 
 122 Ohio St., 45, 170 N. E., 637, this court held: “A statute which relates exclusively to remedial rights is not within the purview of the constitutional inhibition against the legislative enactment of retroactive laws.” To the same effect, see
 
 Richmond Mortgage & Loan Corp.
 
 v.
 
 Wachovia Bank & Trust Co. et al., Exrs.,
 
 300 U. S., 124, 81 L. Ed., 552, 57 S. Ct., 338, 108 A. L. R., 886; 8 Ohio Jurisprudence, 563
 
 et seq.;
 
 16 Corpus Juris Secundum, 865
 
 et seq.;
 
 and 11 American Jurisprudence, 1192
 
 et seq.
 

 Section 11663-1,
 
 supra,
 
 does not take away the remedy ; it merely limits the time for enforcing a deficiency judgment rendered upon an indebtedness secured by mortgage on a dwelling or home site and leaves a reasonable time within which the holder of the deficiency judgment may enforce same.
 

 Section 11663-1,
 
 supra,
 
 was passed May 15,1939, and became effective August 15,1939.
 

 The judicial sale of the foreclosed premises in the instant case was confirmed on March 9, 1936, and the creditor’s bill in the instant case was filed October 7, 1939. The Court of Appeals held that the action on the creditor’s bill was barred under the provision of Section 11663-1,
 
 supra,
 
 which prohibits the enforcement of a deficiency judgment after the expiration of two years from the date of the confirmation of the judicial sale, or after August 19,1939.
 

 Unless the section in question is applicable to premises on which there is erected a storeroom with living quarters above, this holding of the Court of Appeals should be reversed. The applicable part of the section reads: “Any judgment * * * rendered in a court of record in this state upon any indebtedness, which is secured * * * by a mortgage * * # on real property * * * upon which * * * there has been located a dwelling * * * for not more than two families which has been used in whole or in part as a home * * * or which at
 
 *320
 
 any time was or is now held as a homestead by the person who executed or assumed such mortgage * * * or which has been held by such person as a home-site, shall be unenforceable as to any deficiency # *
 

 In coming to a conclusion whether the real estate involved in this case is such as is referred to in Section 11663-1, G-eneral Code, it is not necessary to weigh the evidence, for it is undisputed that the building is a three-story brick building with a storeroom on the first floor and with living quarters on the second and third floors, in which not more than two families dwelt.
 

 The homestead has always been a subject of solicitude on the part of the Legislature of Ohio. Referring to the Homestead Act, it is said in 20 Ohio Jurisprudence, 970: “The Homestead Act is defined to be a measure having for its foundation the highest considerations of humanity,
 
 viz.,
 
 the securing of a home not primarily to the debtor, but to his family and its dependent members, and not so much upon the idea of a personal privilege to the debtor. There is also the thought of the protection of the public, which might otherwise be burdened with the support of an insolvent debtor’s family. These laws originated in a salutary and humane policy.” The foregoing text is supported by many decisions of this court, which will be found in the annotations to the article.
 

 The section in question was originally enacted and reenacted in times of stress, when many home owners were not only losing their homesteads but being further handicapped in caring for their families by deficiency judgments growing out of their attempt to own a homestead. While Section 11663-1,
 
 supra,
 
 includes but goes beyond the technical definition of a homestead, yet the underlying purpose of the Legislature is clearly to protect home owners and owners of home sites, and not the owners of business property. If it were to be held that this section applied to property used for business purposes, there would be a serious question
 
 *321
 
 of its constitutionality. As stated in 37 Ohio Jurisprudence, 614: “To [so] interpret a law as to make it wholly nugatory is the last extremity to which judicial construction should go. When the act or section under consideration is equally susceptible of two constructions, one of which will maintain and the other destroy it, the courts should adopt the former.”
 

 Therefore, it is our judgment, and we so hold, that Section 11663-1, General Code, is constitutional, but that it does not operate to preclude the enforcement of a deficiency judgment rendered for an indebtedness secured by mortgage upon premises on which is erected a building primarily for business purposes, consisting of a storeroom on the first floor and living quarters for not more than two families on the second and third floors.
 

 Coming now to the third question submitted by appellants : The printing of the record in this case was ■dispensed with, but we find among the papers appellants ’ original motion. In respect of this motion, counsel for appellants have set out in their brief the following
 
 per curiam
 
 opinion of the Court of Appeals:
 

 “A motion has been filed in this court by the appellants, who were substituted plaintiffs in the Common Pleas Court, seeking an order of the court requiring the defendant Employees’ Transit Lines, Inc., to permit appellants to inspect and make copies of the books and records of that company, and further to require said defendant to produce said books and records at the trial of this cause.
 

 “On the authority of 17 Ohio Jurisprudence; Evidence, Section 501, the motion is overruled.
 

 “A further motion of appellants for a temporary injunction is also overruled. ’ ’
 

 The transcript of docket and journal entries from the Court of Appeals contains the following entry:
 

 “Motion for order to inspect and. copy and to pro
 
 *322
 
 duce books, etc. Notice of hearing and proof of service filed by appellants.”
 

 The transcript, however, does not disclose any journal entry of the Court of Appeals passing upon appellants ’ motion for an order to inspect and copy and to produce books, etc.
 

 The bill of exceptions in the Court of Appeals, where the case was tried
 
 de novo,
 
 makes no reference to appellants ’ motion, but does show an offer to call certain officers and employees of defendant, Employees’ Transit Lines, Inc., who would, if permitted, testify to matters shown by the records of Employees’ Transit Lines, Inc. However, the various brief s filed on behalf of appellees recognize that the Court of Appeals did make an order overruling appellants ’ motion to require Employees’ Transit Lines, Inc., to permit appellants to inspect books and records. Assuming that there is a journal entry in the Court of Appeals overruling appellants’ motion, we are .of the opinion that that court committed no error in making such ruling. The motion sought permission for appellants or their attorneys to make “an inspection and copy, or permission to take a copy, of the minute books, journals, ledgers, stock books, cash books, day books, records of stock subscriptions of the Employees’ Transit Lines, Inc.; all its records relating to the issuance of shares of stock and the consideration paid for the same, including records of shares of stock issued in payment for promotional services or for any other consideration other than cash; all records, entries, correspondence other than cash
 
 [sic],
 
 all records, entries, correspondence, and writings of whatever nature relating to the payment for shares of stock and the issuance thereof, and all records relating to transactions of whatever nature between said Employees’ Transit Lines, Inc., and Edgar G-. Yeckley, William H. Yeckley, Pearl Smith, Millie King, Bertha Johnson,
 
 *323
 
 and Charlotte A. Yeckley.” The mere recital of this motion shows it to have been a fishing expedition for which there is no justification in the record in this ease. Whatever parts of the records of Employees’ Transit Lines, Inc., were material to the issues could have been obtained through
 
 subpoenas duces tecum
 
 and by calling witnesses familiar with such records.
 

 In its brief in this court, appellee, The Cleveland Trust Company, makes the following contention: “Inasmuch as the Common Pleas Court and the Court of Appeals both found the issues in favor of the defendants, there having been competent evidence introduced to support such findings, it is the contention of The Cleveland Trust Company that the decisions of the lower courts so far as they pertain to the cause of action for setting aside of alleged fraudulent conveyances of real estate should be affirmed. This defendant, The Cleveland Trust Company, should not be required to again defend its interests in the real estate where no cause of action has been proven regardless of this court’s decision on the issue of the transfer of corporate stocks. We are not now concerned with any question of the constitutionality of the Deficiency Judgment Act. The judgments of the lower courts, in-so-far as they related to the alleged fraudulent conveyance of real estate, should, therefore, be affirmed and final judgment rendered thereon for the defendants.”
 

 We do not find The Cleveland Trust Company question raised by any assignment of error in this case, nor do we find from the record that the Court of Appeals passed upon that question.
 

 For error in holding that the deficiency judgment sued upon in this case was unenforceable at the time of the bringing of the instant action, by reason of the provisions of Section 11663-1, General Code, the judgment of the Court of Appeals is reversed and the cause re
 
 *324
 
 manded for proceedings not- inconsistent with this opinion.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Turner, Williams, Hart, Zimmerman and Bettman, JJ., concur.